FILED

2022 Sep-14  PM 02:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

MATTHEW J. HANNAH,              )
                               )
            Plaintiff          )
                               )
    vs.                        )       Case No.   6:21-cv-00938-HNJ
                               )
SOCIAL SECURITYADMINISTRATION, )
COMMISSIONER,                  )
                               )
            Defendant          )

## MEMORANDUM OPINION

Plaintiff Matthew Hannah seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding his claim for a period of disability and disability insurance benefits.  The undersigned carefully considered the record, and for the reasons expressed herein, the court **REVERSES** the Commissioner's decision and **REMANDS** for further consideration of the Disability Benefits Questionnaires from the Veterans Administration.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 7).

"disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. § 404.1505(a).   To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process.   *See* 20 C.F.R. § 404.1520(a)(4).   The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far.   *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.   20 C.F.R. § 404.1520(b).   Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ."   *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the listed impairments.   *Id.* at §

2

404.1520(d).   If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525.   That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.   *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.   20 C.F.R. § 404.1520(e).   At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.   *See id.* § 404.1520(a)(4)(iv).   If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.   *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.   20

C.F.R. §§ 404.1512(b)(3), 404.1520(g).  If the claimant can perform other work, the evaluator will not find the claimant disabled.  *See id.* § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 404.1520(g).  If the claimant cannot perform other work, the evaluator will find the claimant disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"  *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)).  Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. . . .  Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek*, 139

4

S. Ct. at 1154 (citations omitted).  Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

### FACTUAL AND PROCEDURAL HISTORY

Mr. Hannah, age 50 at the time of the ALJ hearing, protectively filed an application for a period of disability and disability income benefits on May 7, 2020, alleging disability as of May 6, 2020.  (Tr. 41, 189).  The Commissioner denied Hannah's claims and his request for reconsideration.  (Tr. 75-109, 112-116).  The Administrative Law Judge ("ALJ") held a hearing on February 2, 2021 (Tr. 36-73), and issued a decision on March 16, 2021, finding Hannah not disabled.   (Tr. 17-31).

Applying the five-step sequential process, the ALJ found at step one that Hannah did not engage in substantial gainful activity after May 6, 2020, the alleged onset date. (Tr. 22).   At step two, the ALJ found Hannah manifested the severe impairments of osteoarthritis, spine disorders, metatarsalgia, and obesity.  (*Id.*).   At step three, the ALJ found that Hannah's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 24).

Next, the ALJ found Hannah exhibited the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with exceptions. He can occasionally lift and/or carry, including upward pulling, of twenty pounds and frequently lift and/or carry, including upward pulling, of ten

pounds.   He can stand and/or walk for four hours in an eight-hour workday with all customary work breaks, no greater than 30 minutes at one time with the ability to sit and change positions a few minutes without being off task.   There is no limitation of the upper extremities for gross or fine handling.   He is restricted from overhead reaching.   He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch but not crawl.   He is restricted from work on ladders or scaffolds, at unprotected heights, around dangerous machinery, and no jobs with vibrations involved.   He should have no frequent exposure to extreme cold.

(*Id.*).

At step four, the ALJ determined Hannah could perform his past relevant work as a logistics director, as well as other jobs existing in sufficient numbers in the national economy, including routing clerk, bakery worker, and parts assembler.   (Tr. 29-30).  Thus, the ALJ determined that Hannah did not suffer a disability, as defined by the Social Security Act, since May 6, 2020.   (Tr. 31).

Hannah timely requested review of the ALJ's decision.   (Tr. 159-61).   On May 12, 2021, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision.   (Tr. 1-3).   On July 9, 2021, Hannah filed his complaint with the court seeking review of the ALJ's decision.   (Doc. 1).

## ANALYSIS

In this appeal, Hannah argues the ALJ erred by failing to characterize his sleep apnea and bilateral carpal tunnel syndrome as severe impairments, and by improperly evaluating the opinion evidence and the Veterans Affairs (VA) disability determination

6

and opinion evidence.  For the reasons discussed below, the undersigned concludes the ALJ properly considered Hannah's bilateral carpal tunnel syndrome and sleep apnea, but he did not properly evaluate the VA's Disability Benefits Questionnaires. That issue warrants remand to the Commissioner for further consideration.

## I.    The ALJ Did Not Err by Failing to Consider Hannah's Bilateral Carpal Tunnel Syndrome and Sleep Apnea as Severe Impairments

As discussed, at step two of the sequential evaluation process the ALJ found Hannah manifested the severe impairments of osteoarthritis, spine disorders, metatarsalgia, and obesity.  (Tr. 22).  Hannah argues the ALJ should also have considered his sleep apnea and bilateral carpal tunnel syndrome as severe impairments. The court agrees with Hannah regarding his bilateral carpal tunnel syndrome, but not regarding his sleep apnea.

Step two of the sequential evaluation process, during which the ALJ considers the medical severity of a claimant's impairments, constitutes a "'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264-65 (11th Cir. 2019) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).

An impairment or combination of impairments manifests as "non-severe" if it "does not significantly limit [the claimant's] physical or mental ability to do basic work

activities."   20 C.F.R. § 404.1522(a).   The term "basic work activities" refers to "the abilities and aptitudes necessary to do most jobs," including:

(1)   Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2)   Capacities for seeing, hearing, and speaking;

(3)   Understanding, carrying out, and remembering simple instructions;

(4)   Use of judgment;

(5)   Responding appropriately to supervision, co-workers and usual work situations; and

(6)   Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).   Thus, an ALJ should characterize an impairment as non-severe "only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."   *Schink,* 935 F.3d at 1265 (citing *McDaniel*, 800 F.2d at 1031).

Even so, the Eleventh Circuit maintains that an ALJ's failure to find a severe impairment at stage two "could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered [the claimant's non-severe] impairment when assessing [the claimant's] RFC, and reached conclusions about [the claimant's functional] capabilities supported by substantial evidence."   *Schink*, 935 F.3d at 1268. The erroneous finding of non-severity constitutes reversible error only when the ALJ

8

limits the RFC assessment to the effects of the impairments he characterized as "severe," and omits discussion of the non-severe impairments.   As the Eleventh Circuit provides:

> Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC. *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984). The ALJ must also consider a claimant's medical condition taken as a whole. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Phillips*, 357 F.3d at 1237 (ALJ has a duty to consider impairments in combination and to determine whether combined impairments render the claimant disabled); *see also* 20 C.F.R. § 404.1523(c) and Social Security Ruling 96-8p.   If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld. *Bowen*, 748 F.2d at 634 ("[I]t is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment." (quoting *Brenem v. Harris,* 621 F.2d 688, 690 (5th Cir. 1980))).

*Schink*, 935 F.3d at 1268-69 (alteration in original).

## A.    The ALJ Did Not Err by Failing to Consider Hannah's Bilateral Carpal Tunnel Syndrome as a Severe Impairment

The record contains a discrepancy regarding the effectiveness of Hannah's treatment for carpal tunnel syndrome.   During the administrative hearing, Hannah testified he underwent carpal tunnel release surgery on his right, dominant hand. Doctors recommended he also undergo a similar surgery on his left hand, but he did not undergo the second surgery because the pain never subsided after the first surgery. (Tr. 49).   He reported using a computer only approximately twice a week for 15 or 20 minutes because the carpal tunnel syndrome causes pain when he types.   However, he

uses a cell phone for calls and texting.   (Tr. 55, 57-58).   He can use a television remote, brush his teeth with an electric toothbrush, place dishes in a dishwasher, and cook. (Tr. 59).

In the administrative decision, the ALJ discussed Hannah's sleep apnea and carpal tunnel syndrome, among other conditions, but he concluded they "establish only a slight abnormality or a combination of slight abnormalities that have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity . . . ."  (Tr. 23).   The ALJ commented generally that the non-severe conditions "are being managed medically and/or are asymptomatic, and should be amenable to proper control by adherence to recommended medical management and medication compliance.   Furthermore, no aggressive treatment has been recommended or anticipated for these conditions."  (*Id.*).

Specifically addressing Hannah's carpal tunnel syndrome, the ALJ stated doctors first identified the condition in July 2020, but "X-rays of the hands found no bony abnormality and there was no atrophy."  (*Id.*).   Hannah underwent right carpal tunnel release that same month, and he reported improved pain and complete resolution of numbness and tingling after the surgery.   The ALJ stated Hannah planned to return for surgery on the left hand later that year.  (*Id.*).   That statement does not comport with the ALJ's previous finding that no doctor had recommended aggressive treatment, as Hannah's physician recommended additional surgery.

The medical records reveal that prior to the right-hand surgery, Hannah notified his doctor the severity of his right-hand symptoms exceeded those of his left hand.   He experienced numbness and tingling in the thumb, index, and middle fingers; digit stiffness in the morning; aching pain in the digits throughout the day; clumsiness; and frequent dropping of items.  (Tr. 777).  The clinical examination of Hannah's hands revealed grossly intact sensation to light touch, full range of motion of all digits, intact thumb opposition, and no atrophy.   However, he displayed a positive Tinel's test at the wrist, causing radiating paresthesias to the long finger, worse on the right, and positive Phalen's and Durkin's test at the wrist causing progressive paresthesias and numbness in the median nerve distribution, worse on the right.   He received injections in both hands, but that treatment did not resolve his symptoms.   (Tr. 779-82).

As the ALJ described, during Hannah's first post-operative visit following the right carpal tunnel release procedure, he reported "doing very well and state[d] he . . . had complete resolution of his numbness and tingling in the digits.   He state[d] his pain [was] improving as well."  (Tr. 774).   Hannah reported continued carpal tunnel symptoms in his left hand, and he stated he desired to proceed with a left carpal tunnel release in a few months.   (Tr. 776).   However, the record does not reflect Hannah ever underwent the left-hand procedure, consistent with Hannah's testimony that he did not undergo the procedure because the pain never completely resolved in his right hand.

Thus, the ALJ based his assessment of a non-severe impairment resulting from carpal tunnel syndrome on a finding of complete resolution of Hannah's right-hand symptoms and an assumption Hannah would undergo a similar procedure on the left hand. However, Hannah testified he did not receive complete relief from the right-hand surgery, resulting in his decision to forego the left-hand procedure. The ALJ did not consider that testimony, and the record does not contain any medical records depicting Hannah's condition after his first post-operative visit.

Hannah's doctors' previous clinical observations of positive Tinel's, Phalen's, and Durkin's signs could reasonably support Hannah's reports of numbness, tingling, stiffness, pain, clumsiness, and the inability to grip items. Those symptoms could cause more than a minimal effect on Hannah's ability to perform work-related activities involving his hands, as the vocational expert testified a person's inability to use their hands more than 15 to 20 minutes at a time would preclude all sedentary work and most light work. (Tr. 71). The ALJ did not address those potential concerns, as he assumed Hannah underwent the left-hand procedure and received comparable results to those he reported during his first post-operative appointment for his right hand.

Even so, the ALJ did not err. An ALJ may consider a claimant's disinclination to undergo surgery as a factor in assessing his allegations of disabling pain. *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 (11ᵗʰ Cir. 2016) ("Lack of a desire for treatment is not good cause for failure to seek treatment."); *Jarrell v. Comm'r of Soc. Sec.*,

12

433 F. App'x 812, 814 (11th Cir. 2011) (the ALJ properly considered the claimant's conservative pain treatment and four-month lapse in medical treatment in assessing her pain allegations); *Alarid v. Colvin*, 590 F. App'x 789, 794 (10th Cir. 2014) (ALJ did not err when determining claimant's symptoms may not have been as serious as he alleged because he had not yet obtained required dental clearance nine months after he had been recommended for knee replacement surgery); *Johnson v. Saul*, No. 5:18cv256/EMT, 2020 WL 1034404, at *8 (N.D. Fla. Mar. 2, 2020) (the ALJ properly considered the claimant's resistance to treatment as a factor in assessing her pain allegations).

Hannah chose not to undergo surgery on his left hand, but he based that decision entirely on his own subjective assessment that the right hand procedure failed to address his condition.   The record contains no evidence that Hannah sought additional treatment for his right hand, or even that he informed his doctors that his condition declined after his first post-operative appointment.   It also contains no evidence that Hannah discussed the decision to forego the left hand surgery with his doctors. Rather, the medical record reflects only that Hannah received good relief from the right hand procedure, and that constitutes substantial evidence that carpal tunnel syndrome did not constitute a severe impairment, assuming Hannah's compliance with prescribed treatment.   Hannah's subjective choice not to undergo the left hand procedure does not undermine that evidence.

13

In summary, the ALJ did not err by deeming Hannah's carpal tunnel syndrome a non-severe impairment.   Even if he did err, the error would be harmless, as the ALJ proceeded to assess Hannah's residual functional capacity to perform work activities at step four.   The ALJ did not assess any limitations related to Hannah's carpal tunnel syndrome, and substantial evidence supports his decision not to do so as the record reflects his carpal tunnel syndrome bore no more than a minimal effect on his ability to work.

### B.    The ALJ Did Not Err by Failing to Consider Hannah's Sleep Apnea as a Severe Impairment

Regarding Hannah's sleep apnea, the ALJ declared:

> The sleep center records end over one year before the period of alleged disability.   The most recent record of May 1, 2019, includes the claimant reporting ongoing CPAP use for at least the past three years and of feeling better and more refreshed during the day with the nighttime CPAP use and that he sleeps seven hours nightly.   Dr. Roy assessed the claimant doing well with no reported snoring or leaks and recommended follow-up in one year . . . .

(Tr. 23).   Hannah did not discuss his sleep apnea during the administrative hearing, and the ALJ did not include any other findings regard sleep disturbances in his opinion.

The record confirms the ALJ's summary of Hannah's May 1, 2019, records.   On that date, Hannah reported to Roy Sleep Medicine that he previously experienced excessive daytime sleepiness, apnea during sleep, snoring, unrefreshing sleep, and sleepiness when sedentary.   Weight gain exacerbated those symptoms, and use of a

CPAP machine relieved them.  He reported sleeping seven hours a night, taking two minutes to fall asleep, awaking one to two times a night, and taking no naps.  He did not report fatigue, difficulty breathing, difficulty concentrating, anxiety, depression, or memory loss.  He presented as alert during the clinical examination, which produced otherwise normal findings.  Dr. Roy stated Hannah was "doing well on PAP with no reported snoring or leaks.  Patient describes feeling better and more refreshed during the day after wearing PAP during the night than without using PAP."  (Tr. 600-01). Dr. Roy counseled Hannah to lose weight to further assist with his sleep apnea, and he scheduled a follow-up visit in one year to assess progress.  (Tr. 601).  Those records provide substantial evidentiary support for the ALJ's decision that Hannah's sleep apnea prevented him from performing work activities and, therefore, did not constitute a severe impairment.

The record does not reflect Hannah received any treatment for sleep apnea after May 1, 2019, but Hannah asserts he experienced "ongoing sleep disturbance with snoring, sleepiness, and apnea" in February 2020.  (Doc. 9, at 18).  Hannah cites a February 25, 2020, Huntsville Hospital record from an upper and lower endoscopy. Before the procedure, Hannah reported no symptoms, and the clinical examination revealed no problems, other than a history of Barrett's esophagus and polyps. Hannah's "Problem List/Past Medical History" notation included ongoing diagnoses of allergic rhinitis, apnea, fragmentation/disruption of sleep, gastroesophageal reflux

disease, obstructive sleep apnea, sleepiness, snoring, and hypertension.   (Tr. 679).

That record presents only a description of Hannah's historical conditions potentially

related to his upper endoscopy.   It does not provide any information about the extent

of his sleep apnea symptoms, indicate CPAP usage ceased to control his symptoms, or

demonstrate those symptoms increased after May 1, 2019.   Accordingly, the February

25, 2020, record does not undermine the substantial evidence supporting the ALJ's

conclusion that Hannah's sleep apnea did not constitute a severe impairment.

In summary, the ALJ did not err by deeming Hannah's sleep apnea a non-severe

impairment.   Even if he did err, the error would be harmless, as the ALJ proceeded to

assess Hannah's residual functional capacity to perform work activities at step four.

The ALJ did not assess any limitations related to Hannah's sleep apnea, and substantial

evidence supports his decision not to do so as the record reflects his sleep apnea bore

no more than a minimal effect on his ability to work.

## II.    The ALJ Erred by Failing to Fully Consider the Disability Benefits Questionnaires from the VA

Hannah also argues the ALJ improperly considered the VA disability

determination and opinion evidence.   Effective March 27, 2017, the Social Security

Administration revised its regulations regarding the consideration of other agencies'

opinions:

> Other governmental agencies and nongovernmental entities – such
> as the Department of Veterans Affairs . . . – make disability, blindness,

16

employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504.

Hannah acknowledges the new regulation governs his claim, but he suggests case law decided under the previous regulation may still apply. (Doc. 9, at 20-21) ("Prior to these new regulations, case law in the 11th Circuit provided that a disability rating from the VA should [be] treated as 'evidence that should be given great weight.' . . . While it remains unclear how that long standing caselaw will be interpreted under the regulations at 20 C.F.R. § 404.1504, this does not mean [the] ALJ is now permitted to completely disregard the VA determination and underlying medical evidence upon which that determination was based."). However, Supreme Court and Eleventh Circuit authority dictates that any previous case law requiring deference to – or even discussion of – another agency's decision does not apply under the revised regulatory scheme.

A court must afford an agency's interpretation of a statute "substantial deference . . . 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-845 (1984); *United States v. Mead Corp.,* 533 U.S. 218, 226-227 (2001)).  "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

Previous authority does not indicate the rule requiring reviewers to afford great weight to other agencies' decisions derived directly from the language of the Social Security Act.  To the contrary, the Social Security Act grants the agency "considerable authority" to issue interpreting regulations.  *Barnhart v. Walton*, 535 U.S. 212, 225 (2002); *see also* 42 U.S.C. § 405(a) ("The Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence

and the method of taking and furnishing the same in order to establish the right to benefits hereunder.").   Hannah has not asserted that the Social Security Administration lacked authority to implement the 2017 regulatory revisions, nor has he otherwise questioned the regulations' validity.

The revised regulations cannot coexist with the rule requiring deference to other agency decisions, as the revised regulations explicitly state previous agency decisions do not bind the Commissioner, and the ALJ should not provide any analysis about those other decisions.   *See* 20 C.F.R. § 404.1504.   Though the Eleventh Circuit has not explicitly addressed the topic, it observed in *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317 (11th Cir. 2020), that "under the new regulation the ALJ no longer analyzes the other agency's decision."   *Id.* at 1324; *see also Taylor v. Kijakazi*, No. 4:20-CV-1545-AKK, 2021 WL 4820653, at *5 (N.D. Ala. Oct. 15, 2021) ("*Noble* recognizes that the newer version of 20 C.F.R. § 404.1504 applies to claims filed on or after March 27, 2017 within the Eleventh Circuit, and an ALJ no longer must give 'great weight' to agency determinations, particularly under the amended regulations – regulations that instruct the ALJ not to analyze the other agency's determination.").   Consistent with this authority, the court will apply the revised regulatory requirements when assessing the relevance, if any, of the VA's determination and related records.

On March 13 and 16, 2018, the VA assigned Hannah a combined disability rating of 100%.   (Tr. 164-85, 286-306).   The ALJ

did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520(c). This includes the Department of Veterans Affair[s] determination of disability dated March 13, 2018, and the rating assigned. The Department of Veterans Affairs standard for determining disability differs from that of the Social Security Administration. They do not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy, as is required by the Social Security Regulations. Thus, a disability rating by the Department of Veterans Affairs is of little probative value in the evaluation of this claim and is not persuasive.

(Tr. 29).

That finding comports with the revised regulations, but Hannah nonetheless argues the ALJ failed to appropriately consider all the supporting evidence underlying the VA's decision. The record partially supports that argument. The ALJ considered portions of Hannah's VA records, but he concluded

such evidence is a summary of the dates and healthcare providers the claimant had contact with largely while serving in the military (i.e., routine vision exams, flight readiness exams, chiropractic/physical therapies, etc.) and the records end in February 2020, before he alleges disability onset. The records list diagnoses, medication information, and procedures but they are not the actual provider medical treatment records, objective exams, physical therapy treatment records, etc., and cannot substantiate the claimant having impairments that are more limiting to him from May 6, 2020, and continuing than is shown in the above finding.

(Tr. 26). Hannah did not challenge that finding, and substantial evidence supports the ALJ's assessment that the records described in that paragraph do not contain medical information that would bear on the decision whether he could perform work-related

20

activities.   (*See* Tr. 685-730).

The ALJ also considered Hannah's primary care records from the VA, but he determined those records

> are for routine follow-ups and medication refills at six-month intervals and with less than daily use reported.  At the August 2019 visit, he reported he had "just retired" and was seeking medication management through the VA clinic.  He was requesting replacement orthotics for his flat feet and reported chronic back pain with the periodic use of Tramadol and Robaxin . . . .   On return in February 2020, he reported he would be "quitting work in 3 months, as work has been stressful."  His exam was unremarkable objectively . . . .   Chronic back pain was stable with "when necessary" use of Tramadol and Methocarbamol, and he reported his knee pain as "sometimes" when using stairs.   He declined a script for Diclofenac gel . . . and follow-up for six months was the recommendation, which is not consistent with uncontrolled symptoms . . . .   At follow-up in August 2020, the visit was by telephone when the claimant reported he has a right knee surgery scheduled for January 2021, reporting his right carpal tunnel release a week earlier and reporting he will return for the left release later, and he was seeking a Lyme titer related to a recent tick bite.  His chronic back/neck pain was assessed stable with refills of "as needed" use of Robaxin and Tramadol allowed and follow-up in six months . . . .

(Tr. 26-27).   That description comports with the administrative record.   (*See* Tr. 383-430, 783-800).

However, as Hannah points out, the ALJ did not discuss a series of Disability Benefits Questionnaires completed on September 6 and 9, 2017, in which various VA medical providers assessed Hannah's limitations with regard to vision, ankle conditions, back conditions, foot conditions, hand and finger conditions, knee and lower leg conditions, neck conditions, shoulder and arm conditions, hypertension, skin diseases,

sinus-related illnesses, kidney conditions, hernias, hematologic and lymphatic conditions, sleep apnea, and hearing, including findings regarding range of motion, muscle strength, sensory function, and tenderness, when applicable. (Tr. 431-502). Though the ultimate result of those assessments – Hannah's 100% VA disability rating – may not warrant discussion pursuant to the revised regulations, the providers' findings could bear upon Hannah's ability to perform work-related activities.   Because the ALJ did not discuss the findings contained within those questionnaires, he did not consider "all of the supporting evidence underlying" the VA's ratings decision, 20 C.F.R. § 404.1504, and he erred.

The Commissioner argues the ALJ's statements that he considered the "entire record," and that he considered "all evidence in the record" (Tr. 22, 24), suffice to demonstrate he considered all supporting evidence pursuant to 20 C.F.R. § 404.1504. However, that the ALJ discussed other portions of the VA records, but did not discuss the Disability Benefits Questionnaires, indicates the ALJ did not consider the effect of the information contained within those questionnaires on Hannah's ability to work. *See Schink,* 935 F.3d at 1269 ("Here, although the ALJ stated he 'considered all symptoms' when assessing Schink's RFC, the content of his decision demonstrates he did not.").

The court recognizes the Disability Benefits Questionnaires date back to 2017, almost three years before Hannah's alleged disability onset date.   Even so, those

assessments could still bear some relevance by painting a longitudinal picture of Hannah's functional abilities.  As another district court within the Eleventh Circuit recently observed:

> In general,"[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Viera v. Comm'r of Soc. Sec.*, [No. 6:17-cv-2213-Orl-TBS], 2018 WL 5095511, at *3 (M.D. Fla. Oct. 19, 2018) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)).  But "[c]ourts within the Eleventh Circuit have found pre-onset date evidence to be significant so long as such evidence is: 1) within close proximity to the onset date; and 2) relevant to a claimant's impairments." *Garrett v. Comm'r of Soc. Sec.*, [No. 6:16-cv-1516-Orl-4GJK], 2017 WL 1460733, at *3 (M.D. Fla. Mar. 15, 2017) *report and recommendation adopted*, 2017 WL 1438321 (Apr. 24, 2017); *see also Clowers v. Colvin*, [No. 2:14-cv-1380-SLB], 2015 WL 3554664, at *8 (N.D. Ala. Jun. 5, 2015) (finding that a consultative examination taken seven months before a claimant's onset date "had some relevance, albeit not complete relevance, to the time period at issue ..."); *Hamlin v. Astrue*, No. 3:07-cv-507-J-TEM], 2008 WL 4371326, at *4 (M.D. Fla. Sept. 19, 2008) (finding that "the Commissioner's own requirement that ALJs consider all the evidence in the record" obligated the ALJ to consider relevant evidence predating a claimant's alleged onset date).

*Michaels v. Comm'r of Soc. Sec.*, No. 6:21-CV-2-DCI, 2022 WL 971854, at *3 (M.D. Fla. Mar. 31, 2022) (first and third alterations in original); *see also Wray v. Kijakazi*, No. 1:20CV156-AW-HTC, 2021 WL 7967592, at *5 (N.D. Fla. Dec. 3, 2021), *report and recommendation adopted*, No. 1:20-CV-156-AW-HTC, 2022 WL 1028932 (N.D. Fla. Apr. 6, 2022) (ALJ properly considered an "older" Disability Benefits Questionnaire, as "it remained relevant.").

The ALJ discussed other medical evidence from 2017, indicating that such

evidence may bear relevance to Hannah's claim. Therefore, he also should have discussed the 2017 Disability Benefits Questionnaires, or at least evaluated whether the questionnaires bore sufficient relevance and proximity to Hannah's onset date to warrant discussion. As the ALJ did not effect that determination at the administrative level, the court cannot review the determination on appeal. *See Phillips*, 357 F.3d at 1240 n.8 (11th Cir. 2004) (stating that the district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"). Therefore, the case warrants remand for the ALJ to consider the Disability Benefits Questionnaires and determine whether they affect Hannah's residual functional capacity.

## CONCLUSION

For the foregoing reasons, the court **REVERSES** the Commissioner's decision and **REMANDS** the case for further consideration of the Disability Benefits Questionnaires from the Veterans Administration.

The court will enter a separate final judgment.

**DONE** this 14th day of September, 2022.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE

24